[Civ. No. 13725. Second Dist., Div. Two. Oct. 28, 1942.]

PAUL W. SAMPSELL, as Trustee in Bankruptcy, etc., Respondent, v. LOUIS GITTELMAN, Appellant.

Martin Gendel for Appellant.

Craig & Weller and Thomas S. Tobin for Respondent.

MOORE, P. J.—The question for determination in this case is whether the state court has jurisdiction to enter judgment for the amount of a turnover order previously entered by the referee in bankruptcy.

On the 21st of March, 1939, upon an involuntary petition, appellant was adjudged a bankrupt. Prior to the filing of such petition he had procured from various creditors, divers and sundry articles of merchandise which he had sold for the sum of $13,592.24. Upon the filing of the involuntary

petition, plaintiff was elected trustee of bankrupt's creditors and thereupon, by reason of his qualification, became vested with title to all of the property of the bankrupt. (11 U.S.C.A., § 110a.) A portion of the assets of the bankrupt was the money so received for such merchandise which he continued to conceal at all times.

After plaintiff had become satisfied that defendant was concealing such money he instituted summary proceedings before the referee in bankruptcy as a result of which the referee made findings of fact to the effect that "after his adjudication in bankruptcy, defendant concealed the sum of $13,592.24, which had been derived from the sale of merchandise purchased by him and disposed of by him between the dates of January 12, 1939, and March 19, 1939." Upon the findings so made the referee entered an order directing the bankrupt to turn the money over to the trustee. After the order had been reviewed by the United States District Judge, plaintiff instituted contempt proceedings against the bankrupt for the purpose of enforcing the turnover order. At the hearing of the contempt proceeding appellant pleaded that at that time he had none of the money in his possession and was therefore unable to make the turnover. Upon such showing of inability to comply, the district court dismissed the contempt proceedings without prejudice and authorized the trustee to institute an action in the Superior Court of Los Angeles County for the purpose of obtaining a judgment *in personam* to the end that the bankruptcy might be closed. Pursuant thereto this action was filed. At the trial below, it was stipulated that all proceedings in the federal court described in the above recitals had been regular and that the debt had not been paid. After a copy of the turnover order over objection had been received in evidence defendant offered to prove that he had innocently incurred the obligations involved in the order in the regular course of business; that he had lawfully sold the merchandise; that no acts of fraud had been committed by himself prior to the filing of the bankruptcy proceedings; that he had concealed no moneys from his creditors; and that he had not purchased or sold merchandise with intent to cheat his creditors. The general objection to such offer was sustained. Thereupon, the court made findings of fact as pleaded by respondent and rendered its decision in his favor in the sum of the turnover order and judgment was entered accordingly.

In the absence of any decision directly relating to the jurisdiction of state courts to consider and adjudge the question presented by such a situation, it will be illuminating here to review the provisions of the Bankruptcy Act relating to the rights of a trustee and to the intention of Congress to confer jurisdiction upon the state courts to entertain actions brought by a trustee for the recovery of assets of the bankrupt's estate. The trustee of a bankrupt estate is vested with the title to all of the nonexempt property of the bankrupt as of the date of the filing of petition in bankruptcy. (11 U.S.C.A., § 110a.) The dominion of the trustee extends to all property transferred by the bankrupt in fraud of his creditors, (subd. 4 of 110a) and to all property which, prior to the filing of the petition, the bankrupt might by any means have transferred, or which might have been levied upon and sold under judicial process or otherwise seized and taken away. Concurrent jurisdiction is conferred upon both state and federal courts to avoid fraudulent transfers of the bankrupt's assets (11 U.S.C.A., § 110e); to avoid preferences granted creditors within four months prior to the filing of the petition (96b); to avoid fraudulent liens and transfers made within the same four months for the purpose of hindering, delaying or defrauding creditors (107e). In addition to such provisions the trustee of a bankrupt's estate is authorized *to prosecute any action in the court where the bankrupt might have brought an action* had there been no proceedings under the Bankruptcy Act (11 U.S.C.A. 46b).

From the several sections of the act pertaining to jurisdiction, there appears to be no provision for the exclusive jurisdiction of the federal courts in bankruptcy matters except in relation to the bankrupt's discharge from his debts, the administration and control of his estate, allowance of claims, division of the net assets among the creditors, and actions for the enforcement of certain federal criminal statutes designed to insure a safe conduct of bankruptcy proceedings (11 U.S.C.A., § 11). The implication is that such exclusive jurisdiction in the federal courts is confined only to those matters which the Congress had in mind in enacting the Bankruptcy Act and amendments thereto. The above cited sections imply an intent upon the part of the Congress to leave the trustee of a bankrupt's estate free to make use of such courts as are available to recover or to safeguard

the rights of the creditors of such estate. Not a section of the act divests the state courts of jurisdiction of an action to recover that which belongs to the creditors, but on the contrary, a liberal interpretation of section 46b, *supra,* inclines us to the conclusion that state courts were favored in all cases except in those of diverse citizenship of the litigants. No good reason appears to favor the exclusive jurisdiction of the federal courts in any plenary action or in any proceeding involving the rights of the bankrupt or the creditors except where exclusive jurisdiction over certain matters is confined to the federal courts. (§ 11, *supra.*)

Indeed, it is inconceivable that any such jealousy could have existed in the personnel of Congress at the time of creating the act as would have led that body into the dubious course of depriving trustees and receivers in bankruptcy of the use of the most convenient agencies in the pursuit of the rights for whose protection they are especially charged. Had a situation similar to that of the instant parties existed forty years ago, under the law as appellant contends, a trustee residing. in Fresno, in order to sue a dishonest bankrupt for assets he. had concealed prior to the bankruptcy, would have been required to journey to Los Angeles to institute his action in the federal court instead of filing in the Fresno Superior Court. No such folly could have been intended. It has been a universal rule in the United States, as it was in the colonies, that an obligor in any civil matter may be brought to justice in the realm where he is found.

In the constitutional convention it was contended by a group led by Alexander Hamilton that all justice should be dispensed by the state courts. After provision was .made for a specified federal jurisdiction nothing was thereafter inserted in the organic law or enacted by a federal statute to shield an evildoer within a state from the effects flowing from. the infringement of its laws. Merely because the Constitution vested the federal courts with exclusive jurisdiction over bankruptcy matters and .other specific acts and with reference to designated properties affords no basis for the inference that an officer of a federal court may not proceed in a state court to effect a speedy execution of his duties. But without regard to such arguments if the jurisdiction of the state courts were dependent upon provisions of the Bankruptcy Act, section 46b, *supra,* is sufficient to confer such jurisdiction.

There is nothing sacrosanct about a dishonest bankrupt. He is entitled to no special privileges; he has earned no coveted exemptions. It has never been suggested by any court, nor is it implied in any statute, that after converting his tangible assets into money which he has concealed, he might retreat to the shadow of a federal court and successfully cry: "*Ne plus ultra*," and there await the pronouncement of his discharge from futile proceedings because, forsooth, he has so deeply buried his stolen treasure.

Originally, the bankruptcy court had no jurisdiction to try a suit by a trustee to recover assets of the estate. Such actions had to be brought in the state courts unless there was a diversity of citizenship. (*Bardes* v. *First National Bank,* 178 U.S. 524 [20 S.Ct. 1000, 44 L.Ed. 1175].) After the act was amended in 1903, giving the bankruptcy court concurrent jurisdiction it was held that not even possession by that court of proceeds of the sale of mortgaged chattels, could deprive the state court of its jurisdiction of a plenary action to set aside the mortgage as fraudulent. "No principle of comity was violated and there was no interference with the bankruptcy court." (*Frank* v. *Vollkommer,* 205 U.S. 521, 526 [27 S.Ct. 596, 51 L.Ed. 911].) In one case the trustee of a bankrupt's estate sued the bankrupt and his spouse in ejectment in a state court to be restored to the occupancy of lands to the possession of which the estate was entitled. The trustee was not required to rely upon the summary order of the federal court. (*Levy* v. *Miller,* 48 R.I. 250 [137 A. 7].) In the Levy case it was contended that such jurisdiction could not be exercised because the summary jurisdiction was still vested in the federal court as appellant contends here. While there was no direct authority for the court's jurisdiction of the case, it held that since Miller and his wife were both in possession and asserting the right to remain, and since the action did not interfere with the administration of the estate, Levy had properly brought his action in the state court as any other owner of realty had the right to do.

Section 46b, *supra,* is designed to leave no doubt as to the right of a trustee to proceed in a state court. That section's sole purpose is to indicate the courts which have jurisdiction in event he conceives he has a cause. He may be mistaken as to his facts or he may have misconceived the law. But whatever the truth may be as to his right of recovery,

he errs not in proceeding in a state court against the evil-doer. (*Bardes* v. *First National Bank, supra.*)

■ Because respondent may have pursued all remedies available to him in the federal courts does not defeat him of the right to sue in the state courts. Upon his election he became the titular owner of all of the bankrupt's estate as of the date he was adjudged a bankrupt. (§ 110a, *supra; Everett* v. *Judson*, 228 U.S. 474 [33 S.Ct. 568, 57 L.Ed. 927].) He was charged with the duty actively to investigate the affairs of the estate and the conduct of the bankrupt. He pursued the procedure prescribed for bankruptcy courts under such circumstances. (*Cooper* v. *Dasher*, 290 U.S. 106 [54 S.Ct. 6, 78 L.Ed. 203].) Before the bankrupt could be imprisoned for a disobedience of the turnover order, it was incumbent upon the trustee to show that the bankrupt had the present ability to pay. (*Freed* v. *Central Trust Co.*, 215 F. 873 [132 C.C.A. 7]; *Matter of Heppelle*, 2 F.Supp., 663.) But the facts that he had by his dishonesty successfully secreted the stolen wealth and that the contempt proceedings were futile, furnish no basis for absolving appellant of his duty to pay the money. (*Gray* v. *Arnot*, 31 N.D. 461 [154 N.W. 268]; *Wilkinson* v. *Walker*, 3 F.2d 867.) Indeed, the responsibility of appellant must be established in a plenary action based upon his fraudulent concealment. (In the *Matter of Korin, Bankrupt*, 25 F.Supp. 323.) Appellant having gained possession of the money he became an involuntary bailee or trustee thereof (*Gray* v. *Arnot, supra*), for which judgment should be entered in order to effect a judicial sale of his property hereafter to be found.

■ Appellant conceives himself to be aggrieved because the trial court proceeded upon the hypothesis that the turnover order was res judicata of the claim of respondent against appellant. Familiar statutes might have reassured him upon that score. "The judgment or order is, in respect to the matter directly adjudged, conclusive between the parties . . . litigating for the same thing under the same title and in the same capacity. . . ." (Code Civ. Proc., § 1908.) Also, whatever appears upon the face of the judgment is deemed to have been adjudged in the former proceeding, and it is also deemed to include whatever is actually or necessarily included therein. (Code Civ. Proc., § 1911.) In view of the pleading filed in the summary proceeding and the findings of fact made by the bankruptcy court, no doubt survives that the

turnover was an adjudication of the debt of appellant to respondent. In that court the sole issue was whether appellant had concealed a sum of money belonging to the estate. That is the only issue here. The parties there are the identical parties here, and they appear in the same capacity now as they did then. The litigation of the parties in the federal court resulted in findings of fact which are the identical facts pleaded in the court below. While the federal court entered the turnover order prescribed in such cases, it was directed at the very gentleman who is defendant here. The turnover order comes before the courts of California with the same force and effect as would a judgment of a sister state. The parties had notice; they contended at the trial, and both enjoyed the privileges of the court's process, hearing and deliberation. It was a final order by a court having jurisdiction of both parties and the subject matter. It was not a judgment *in rem* but was directed to the specific performance of a definite act by appellant and no other. His position does not differ from that of a party who, once adjudged specifically to perform a contract, is later confronted with the decree of specific performance in an action for damages after his failure to perform. (*White* v. *Schader,* 185 Cal. 606 [198 P. 19, 21 A.L.R. 499].) Nor is it dissimilar to the position of a preferred creditor who, after his claim has been disallowed by the referee in a summary proceeding, finds it is res judicata in a plenary action by the trustee to recover such preference. (*Myers* v. *International Trust Co.,* 263 U.S. 64 [44 S.Ct. 86, 68 L.Ed. 165]; *Lincoln* v. *Peoples National Bank,* 260 F. 422.) After a finding by the referee that the bankrupt had possession of the property at the date of the adjudication of his bankruptcy and the entry of a turnover order which is affirmed by the district court, "the fact of possession or control of property and its retention and concealment by the bankrupt becomes settled beyond future controversy." (*Toplitz* v. *Walser,* 27 F.2d 196.)

Judgment affirmed.

Wood (W. J.), J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 22, 1942. Edmonds, J., and Traynor, J., voted for a hearing.