[No. 34696.     Department Two.     September 29, 1960.]

PATRICK KANE, *Respondent*, v. JOSEPH LINCOLN SMITH, *Appellant*.[1]

*Gleeson & Smith*, for appellant.

*Geo. W. Young* and *L. W. Smith*, for respondent.

HILL, J.—We are concerned with the effect of the dismissal of a voluntary bankruptcy proceeding upon a turn-

[1] Reported in 355 P. (2d) 827.

over order, which order, and the right to enforce it, had been assigned to a third party for a "fair and just" consideration.

Joseph Lincoln Smith (the defendant in this action) had filed a voluntary petition in bankruptcy July 8, 1954. Subsequently, on April 11, 1956, after a hearing before a referee in bankruptcy, an order was entered directing that the bankrupt turn over and deliver to the trustee the sum of $3,811.60.

Subsequently, the referee entered an order reciting that Patrick Kane (the plaintiff in this action) had offered to pay the sum of $3,811.60 to the trustee in consideration of the trustee giving an assignment of the turnover order,

" . . . and it appearing that by so doing the trustee will make a full recovery of all sums owing by the bankrupt to the trustee as directed to be paid under the order of April 11, 1956, and that said offer is fair and just; . . ."

This order, entered January 11, 1957, authorized and directed the trustee, upon the payment to him of the sum of $3,811.60, to execute and deliver to Patrick Kane an assignment of the turnover order. On the same date, Kane paid $3,811.60 to the trustee and received his assignment of

" . . . all rights of which I am possessed to recover from said bankrupt the sum of $3,811.60 as directed to be paid by said bankrupt to me under the terms of a Turnover Order signed by the said Michael J. Kerley [the referee], on April 11, 1956."

The plaintiff, as assignee of the turnover order, secured the registration of that order as a judgment in the superior court of the state of Washington for Spokane county, and commenced an action against the bankrupt for the $3,811.60 with interest from January 11, 1957 (the date of the assignment).

The trial court found:

Finding four: "The plaintiff has complied with the laws in every way pertaining to the proper registration of a judgment from the Federal Court."

Finding five: "After the commencement of plaintiff's action and after the garnishment had been served upon the Columbia Pacific Life Insurance Company, the defendant,

Joseph Lincoln Smith, obtained dismissal of his bankruptcy proceeding at Boise, Idaho. Said order of dismissal reinstated all claims of creditors listed in the bankrupt's petition subject to any payments made thereon. Nowhere in the said petition or order of dismissal was any reference made of notice to the plaintiff of such petition for dismissal nor any reference made to the dismissal of the Turnover Order which had been assigned in the bankruptcy hearings in the Federal Court at Spokane, Washington, to the plaintiff for $3,811.60, and the Court further finds that the order dismissing the bankruptcy petition did not in any way affect the validity of the Turnover Order which had been assigned previous to the Petition for Dismissal and after the State Court had obtained full jurisdiction of the matter. That the defendant at no time offered to repay the $3,811.60 which the trustee had used for defendant's benefit."

The trial court concluded from these findings that the order dismissing the bankruptcy petition did not invalidate the turnover order and entered judgment for $3,311.60, together with interest. (The reduction of five hundred dollars from the amount of the turnover order is not explained; nor is it questioned by either party.)

The defendant has appealed.

After the first argument of the appeal May 19, 1959, in which the striking of the statement of facts was an issue, we filed an opinion (August 20, 1959) remanding the case for further consideration by the trial court relative to the certification of the statement of facts (*Kane v. Smith* (1959), 154 Wash. Dec. 693, 343 P. (2d) 186).

On remand, the trial court adhered to its original certification; and this court, after again hearing argument on May 20, 1960, entered an order striking the statement of facts; consequently, the trial court's findings of fact must be accepted as verities and the appellant can succeed only in the event that the findings of fact do not support the judgment entered. *Saletic v. Stamnes* (1958), 51 Wn. (2d) 696, 321 P. (2d) 547; *Kirby v. Woolbert* (1955), 48 Wn. (2d) 141, 291 P. (2d) 666; *Jordan v. DiRae* (1953), 42 Wn. (2d) 934, 257 P. (2d) 773; *Leiva v. King County* (1951), 38 Wn. (2d) 850, 233 P. (2d) 532; *Wheatley v. Washington Jockey*

*Club* (1951), 39 Wn. (2d) 163, 234 P. (2d) 878; *Browne v. Anderson* (1950), 36 Wn. (2d) 321, 217 P. (2d) 787.

Only one issue, therefore, remains, *i.e.*, whether the order dismissing the bankruptcy proceeding invalidated the turnover order as a matter of law and irrespective of the facts as found by the trial court.

A turnover order is not expressly created or regulated by the Bankruptcy Act. It is a judicial innovation fashioned by the courts of bankruptcy to efficiently and expeditiously accomplish ends prescribed by the statute in retrieving concealed and diverted assets (also books and records). *Maggio v. Zeitz* (1948), 333 U. S. 56, 92 L. Ed. 476, 68 S. Ct. 401. On an application by the trustee and after a hearing (if the evidence of possession or control by the bankrupt is "clear and convincing" (*Oriel v. Russell* (1929), 278 U. S. 358, 73 L. Ed. 419, 49 S. Ct. 173) ), the referee will enter an order directing the bankrupt to turn over to the trustee specific property, money, or records as the circumstances may require.

The issue in turnover proceedings is whether the bankrupt had nonexempt property within his possession or control at the time of the institution of the proceedings, which he had not delivered to his trustee. The entry of a turnover order by a referee in bankruptcy, which is not reviewed, or which if reviewed is affirmed, settles beyond further controversy the fact of the possession and control of the property by the bankrupt at the time of the institution of the turnover proceedings. *Oriel v. Russell, supra; Toplitz v. Walser* (3 Cir. 1928), 27 F. (2d) 196.

The property which the bankrupt has concealed and refuses to turn over to the trustee may be money. *Fisher v. Medwedeff* (1944), 184 Md. App. 167, 40 A. (2d) 360; *Sampsell v. Gittelman* (1942), 55 Cal. App. (2d) 208, 130 P. (2d) 486; *Oriel v. Russell, supra*.

The turnover orders are generally enforced by contempt proceedings, but that is not necessarily the only remedy available. *Fisher v. Medwedeff, supra; Sampsell v. Gittelman, supra*.

▆ Decisions of the California and Maryland courts

are decisive of the right of the trustee in bankruptcy to sue on a turnover order in the state courts and recover a judgment thereon.

In *Sampsell v. Gittelman, supra,* the bankrupt had secured merchandise from various creditors which he had sold for $13,592.24. The referee made findings concerning the concealment of this money, and ordered the bankrupt to turn the money over to the trustee. This turnover order was reviewed by the United States District Court and affirmed. The trustee brought an action on the turnover order in the superior court of the state of California for Los Angeles county and secured a judgment for the amount of that order, *i.e.,* $13,592.24. The court of appeals affirmed, saying (p. 215),

" . . . The turnover order comes before the courts of California with the same force and effect as would a judgment of a sister state. The parties had notice; they contended at the trial, and both enjoyed the privileges of the court's process, hearing and deliberation. It was a final order by a court having jurisdiction of both parties and the subject matter. It was not a judgment *in rem* but was directed to the specific performance of a definite act by appellant and no other. His position does not differ from that of a party who, once adjudged specifically to perform a contract, is later confronted with the decree of specific performance in an action for damages after his failure to perform. . . ."

In *Fisher v. Medwedeff, supra,* the referee had entered an order directing the bankrupt to turn over $39,760.10 in cash or merchandise to the trustee. On contempt proceedings, the bankrupt was found to have dissipated the funds and was unable to comply with the order, and, hence, imprisonment for contempt was not an appropriate remedy.

The trustee sued on the turnover order in the Baltimore city court and recovered a judgment for the amount of that turnover order, *i.e.,* $39,760.10. The Court of Appeals of Maryland affirmed the judgment, saying (p. 171),

"We think the State Courts have jurisdiction in a suit such as this in which the trustee in bankruptcy is endeavoring to collect what is really a debt due by the bankrupt to the trustee.

"The turn-over order of the Federal Court was a final order which conclusively adjudicated the amount of money due by the bankrupt to the trustee's estate, and the fact of his possession and concealment of the same. It is not subject to collateral attack. . . .

"The turn-over order is not invalid because it directs the payment of a sum of money in lieu of a return of the property or in the alternative. . . .

"It has been held that a turn-over order is not a judgment (*In re Schlesinger*, 102 F. 117), nevertheless, it is a binding and final order, which, as above stated, cannot be collaterally attacked in any way. There would, therefore, seem to be no reason why an action at law should not lie to recover the same. Perhaps the closest analogy to this turn-over order is an award of alimony which, in this State at least, when the same is overdue, may be treated as a debt for some purposes. . . .

"It has also been held by this Court that an award of alimony by a Court of another state may form the basis for an action at law in this state. . . ."

The Maryland court also answers an argument, made by appellant here, that the judgment in the action at law exceeds in scope and value the turnover order, and says (p. 172),

". . . Appellant claims that such a suit would subject him to a judgment which might cause his after-acquired property to be taken from him. Such a claim is without merit when it is remembered that the amount of the judgment represents money and property acquired by him before the bankruptcy which he has secreted or otherwise disposed of and wrongfully failed to deliver to the trustee. By taking such after-acquired property, the bankrupt would only be required to make restitution of that which he had wrongfully deprived his creditors."

We have thus far been concerned with establishing the right of the trustee of a bankrupt's estate to sue and recover a judgment on a turnover order in the courts of this state. What has been said is preliminary to the determination of the real issue on this appeal, as stated in the opening paragraph of this opinion. As is sometimes the case, the preliminaries take much longer than the main event.

There are two unique features to this case: (1) the action

is not by the trustee but by an assignee, and (2) the bankruptcy proceeding was dismissed before the judgment in this case was entered. The first is of interest, but of no significance. We question the desirability and the policy of assigning the right to enforce turnover orders to private parties; but we recognize, as said in *Maggio v. Zeitz, supra,* that the means of making turnover orders effective have been left "largely to judicial ingenuity." The assignment did result in making $3,811.60 immediately available to the bankrupt's estate. No review of the order was requested in the United States District Court, and no issue as to the validity of the assignment is before us.

Since the striking of the statement of facts, the only basis for the appeal is that the order of dismissal terminated the bankruptcy proceedings *ab initio*; that the turnover order is therefore, a nullity and that all rights which the plaintiff may have received for his $3,811.60 are divested.

■ It is clear that the United States District Court, in dismissing the bankruptcy proceeding, did not regard the proceedings prior to the dismissal as a nullity. It did not attempt to terminate the proceedings *ab initio*; it "reinstated all claims of creditors listed in the bankrupt's petition subject to any payments made thereon." Implicit in this language is an intention to recognize transactions by the trustee on behalf of the estate during the bankruptcy proceedings. As the district court intended to recognize claims reduced during the trustee's administration, so it must have intended to recognize the validity of transactions which had added to the bankrupt's estate and helped make possible such payments as may have been made.

The appellant's authorities, supporting the general proposition that

"... 'By the discontinuance of an action not only are the further proceedings therein arrested, but what has been done therein is also annulled, so that the action is as if it never had been. ...'"

are not applicable to the question now before the court; and, even where applicable, the courts will not permit the operation of the quoted rule to work a fraud. See *Yoder v.*

*Yoder* (1919), 105 Wash. 491, 178 Pac. 474, 3 A. L. R. 1104.

We are concerned with two interlocutory orders, valid when made: the turnover order, and the order directing the assignment of the turnover order on the payment of $3,811.60. Both of these orders were reviewable, but neither was reviewed. If the order directing the assignment of the turnover order was not a judicial sale of a chose in action, the analogy is close.

Any nullification of the turnover order, without the return to the plaintiff of the $3,311.60 found to be due to him, would constitute an unjust enrichment of the defendant. As we have indicated, the trial court's finding "That the defendant at no time offered to repay the $3,811.60 which the trustee had used for defendant's benefit," is conclusive.

No such divestment of the plaintiff's right to have the turnover order enforced can be effected by this manipulation of the voluntary bankruptcy by the defendant for his own benefit.

■■ We have some doubt as to the right of the plaintiff to interest from the period from the date of the assignment of the turnover order (January 11, 1957) to the date of the judgment (December 13, 1957), but we decline to pass on that issue for two reasons: (1) There is nothing in the record to indicate that the question of the right to such interest was ever presented to the trial court or in any way brought to its attention, and we have consistently said that we do not review the trial court's actions as to questions not brought to its attention. *Timm v. Gilliland* (1959), 53 Wn. (2d) 432, 334 P. (2d) 539, and cases cited. (2) The appellant has not sustained the burden of persuasion. He does no more than raise the question, in a five-line paragraph in his brief, citing no authorities in opposition to the position taken by the trial court. Unless the error is obvious, the burden of demonstrating the error is on the appellant.

The judgment appealed from is affirmed.

WEAVER, C. J., MALLERY, FOSTER, and HUNTER, JJ., concur.