FILED
COURT OF APPEALS
DIVISION II

2014 JUN 12 AM 11: 50

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re Parentage of: | No. 43849-6-II |
| JEB | |
| SCOTT LESLIE BOOTH, | |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| VANESSA JANEA BARNETT (f/k/a Fallis), | |
| Appellant. | |

BJORGEN, A.C.J. — Vanessa Barnett appeals the trial court's denial of her motion to vacate the final order modifying the parenting plan for JEB, her child with Scott Booth. Barnett contends that she agreed to a temporary modification, not a permanent one, and that the trial court erred in not vacating the modified plan based on her mistaken understanding of the plan's permanency. We affirm.

## FACTS

Barnett gave birth to JEB in 2000. In 2002, Booth, who was not married to Barnett, filed a parentage action to determine his rights with respect to JEB. The suit ultimately resulted in a 2006 parenting plan making Barnett JEB's primary residential parent.

In October 2011, the army transferred Barnett's husband from Washington to Kentucky, and Barnett moved with him. Before Barnett moved, she and Booth agreed to modify JEB's residential arrangements with the entry of a new parenting plan drafted by Barnett and Booth.

The court ultimately adopted this proposal as a new "[f]inal [o]rder" for JEB's parenting plan. Clerk's Papers (CP) at 9.

The new plan made Booth JEB's primary residential parent. JEB would reside with Booth but have residential time with Barnett, although the plan suspended this residential time after Barnett's move. However, Barnett would again have residential time with JEB if she "return[ed] to live within 50 miles of" Booth. CP at 11. The plan also set JEB's future holiday and vacation schedule. JEB would spend alternate winter vacations, spring break, and midwinter breaks with Booth or Barnett. JEB would spend every Father's Day with Booth and every Mother's Day with Barnett. Additionally, JEB would live with Booth at the end of the school year, but she would spend at least five weeks during the summer of 2012 with Barnett. The section of the plan describing JEB's summer schedule allowed modification by the mutual consent of Booth and Barnett if made before February 2012.

Because the plan provided that JEB would reside the majority of the time with Booth, it designated him as her custodian "for purposes of all other state and federal statutes which require a designation or determination of custody." CP at 13. However, Booth's designation as JEB's custodian did "not affect either parent's rights and responsibilities under [the] parenting plan." CP at 13. Booth and Barnett "agree[d] to readdress [Booth's designation as custodian] no later than April 15th of 2012." CP at 13.

At the end of the 2011-12 school year, Barnett contacted Booth about allowing JEB to move to reside with her in Tennessee. Booth denied Barnett's request, telling her that JEB

2

belonged in Washington and that he would not consent to allowing her to spend time with Barnett in Tennessee beyond the visitation provided in the parenting plan.[1]

Barnett then moved to vacate the parenting plan, claiming that she had mistakenly believed that the plan was only a stopgap to allow JEB to finish the school year in Washington. She declared that she "didn't know that by signing the previous document it would finalize permanent changes into the parenting plan. If I did know this, there is NO chance I would have signed this allowing this change to be permanent." CP at 26.

In addition to her own declaration, Barnett offered two other pieces of evidence in support of her motion to vacate. First, Barnett submitted a declaration from her mother-in-law. The mother-in-law witnessed Barnett signing the parenting plan and declared that Booth had assured Barnett that the modified plan was temporary and would not affect her rights beyond allowing JEB to remain in Washington for the 2011-12 school year. Barnett also submitted a letter that she sent to the Division of Child Support of the Washington State Department of Social and Health Services (DSHS). The letter, received around two weeks before the entry of the new parenting plan, stated that Barnett "would like [her] child support to be stopped as of November 2011, due to [her] daughter staying with her father tell [sic] the end of the school year, for 7 months until we determin [sic] her Permanent Resident [sic]." CP at 51.

Booth opposed the motion to vacate. He denied that the plan was temporary, declaring that "[t]he parenting plan was designated as a 'final order' and we meant for it to be final." CP at 31. Booth contended that Barnett's declaration supporting the original modification of the parenting plan showed her intent for a permanent change. Booth also introduced a declaration

---

[1] Though Barnett's husband is deployed to a base in Kentucky, he and Barnett live in Tennessee.

3

from his sister-in-law, who had discussed the move with Barnett and declared that Barnett "never stated or implied that she intended to leave [JEB] here only temporarily." CP at 65.

At the hearing for Barnett's motion to vacate, Barnett referenced the letter she had sent to DSHS and Booth objected that it was hearsay and that Barnett had not timely provided the letter to him. The trial court responded, "I saw the notice. It's basically a self-serving hearsay that she sent a letter to DSHS." Verbatim Report of Proceedings (VRP) (July 20, 2012) at 3. Despite this statement, the trial court never ruled on Booth's objection and never formally excluded the letter from the record.

Turning to Barnett's claim of mistake in agreeing to the new parenting plan, the trial court stated:

> Let me just tell you what is troubling to me in this case is the parenting plan they entered into talks about mom's summer visitation for this summer. It doesn't talk about the child going to go with mom permanently in the summer of 2012. It wouldn't seem to make a lot of sense to have them talking about summer visitation in 2012 if the intent was that the child was going to be living with mom on a permanent basis. There's also language about if the mom moves to Kentucky and what would happen and also language regarding if the mom relocates locally what would happen. Those would all seem to imply that there was discussion and agreement regarding a parenting plan that's contrary to what she's now asserting.

VRP (July 20, 2012) at 3-4. Ultimately, the court stated:

> All of the facts, and in particular the expressed language in the parenting plan and the language in her affidavit that she filed contemporaneously with that, she had it notarized. It says the agreement is the child is going to live with the dad and have summer visitations with me. It didn't say only for 2011 or 2012, and then there's no language saying the child is going to revert to her primary residential placement, and so I'm going to dismiss the motion to vacate, deny it. I will award attorney fees of $750.

VRP (July 20, 2012) at 6. The trial court entered an order denying Barnett's motion to vacate the parenting plan, but no findings of fact or conclusions of law concerning its decision.

4

## ANALYSIS

Barnett raises two issues on appeal. First, she claims that the trial court erred in denying her motion to vacate the final parenting plan. Second, she contends that the trial court erred in excluding the letter she sent to DSHS as hearsay. We find no error and affirm.

### I. DENIAL OF THE CR 60(B) MOTION

Barnett first seeks reversal of the trial court's denial of her motion to vacate the final parenting plan order. She contends that the trial court ignored various pieces of evidence indicating that the plan was ambiguous, appearing to argue that this ambiguity supports her claim of mistake. We affirm the trial court's denial of Barnett's motion to vacate.

CR 60 provides the mechanism for obtaining "relief from judgment or order." CR 60(b) provides that

> [o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>     (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order.
>     . . .
>     (11) Any other reason justifying relief from the operation of the judgment.

A party's misunderstanding as to the terms of a stipulated judgment can provide a ground for relief under CR 60(b)(1). *Morgan v. Burks*, 17 Wn. App. 193, 199, 563 P.2d 1260 (1977). Barnett claims that she made a similar mistake, contending that she did not understand the final nature of the parenting plan at issue when she agreed to modify the previous plan.

When reviewing a trial court's denial of a motion to vacate, we review only the trial court's decision, not the merits of the underlying judgment. *Bjurston v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 553 (1980). Further, because a CR 60(b) motion "is addressed to the [trial

court's] sound discretion," we do not address arguments not made before the trial court. *Jones v. City of Seattle*, 179 Wn.2d 322, 337-38, 314 P.3d 380 (2013) (citing *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 580, 599 P.2d 1289 (1979)); *In re Marriage of Wherley*, 34 Wn. App. 344, 348, 661 P.2d 155 (1983). We review a trial court's denial of a motion to vacate a judgment under CR 60(b) for an abuse of discretion. *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 821, 225 P.3d 280 (2009).

To determine that the trial court abused its discretion, we must find that the "'exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons.'" *Mitchell*, 153 Wn. App. 821-22 (quoting *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995)). We may therefore overturn the trial court's decision only if we find that it "'rests on facts unsupported in the record or was reached by applying the wrong legal standard'" or, though using the correct legal standard, "'adopt[ed] a view that no reasonable person would take'" or "'arriv[ed] at a decision 'outside the range of acceptable choices.'" *Mitchell*, 153 Wn. App. at 822 (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). As discussed below, Barnett's motion to vacate hinges on the trial court's resolution of a question of fact, meaning our review for an abuse of discretion turns on whether the trial court made a decision supported by the record and whether its ultimate decision was reasonable or within the realm of acceptable choices. *Mitchell*, 153 Wn. App. at 822.

Both parties brief the issues before us as though we are interpreting ambiguity in the parenting plan. We are not. We are reviewing whether the trial court abused its discretion in denying Barnett's motion to vacate. While CR 60(b)(11) theoretically might allow relief from judgment where the judgment was not intended as final, Barnett did not make that claim in the

6

trial court and we cannot review it here.[2] *Wherley*, 34 Wn. App. at 348. A fair reading of Barnett's motion to vacate indicates that she argued that she mistook the final parenting plan as a temporary one and sought relief because of this mistake. The parties' argument before the trial court confirmed this as Barnett's attorney stated that she sought relief based on mistake. Our review of the trial court's denial of Barnett's motion to vacate is limited to the challenges Barnett raised before the trial court, in this case her claim of mistake, and we construe Barnett's arguments of ambiguity in the parenting plan as evidence she mistook the plan's nature.

Whether Barnett mistakenly agreed to the November 8, 2011 parenting plan is a question of fact. *See Vermette v. Andersen*, 16 Wn. App. 466, 469-70, 558 P.2d 258 (1976) (parties' mistaken beliefs about the terms of an agreement is a question of fact). We review a trial court's findings of fact for substantial supporting evidence. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). Evidence is substantial when present "'in sufficient quantity to persuade a fair-minded person of the truth of the declared premise.'" *Wilson*, 165 Wn. App. at 340 (quoting *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). In performing this review, we may "'not substitute [our] judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'" *Wilson*, 165 Wn. App. at 340 (quoting *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)). Because the trial court here entered no findings of

---

[2] Even if we did reach the merits of this argument, we would still deny Barnett's motion. The intent of the trial court approving the final parenting plan order is the key, not the intent of the parties. *Kirshenbaum v. Kirshenbaum*, 84 Wn. App. 798, 803, 929 P.2d 1204 (1997). We limit our review to the decree's provisions in attempting to discern the issuing court's intent. *Kirshenbaum*, 84 Wn. App. at 803. The order is designated as a final order and it contains provisions governing JEB's residential time for the indefinite future. The provisions Barnett points to as creating ambiguity speak to things Booth and Barnett might do; they do not require further action by the trial court. All these provisions support the view that the trial court intended its order approving the parenting plan to be final.

fact, we view its written order denying Barnett's motion as implicitly embodying any findings made by the court, and we look to its oral ruling, which was consistent with its written order, to help interpret these implicit findings. *In re Marriage of Kimpel*, 122 Wn. App. 729, 735, 94 P.3d 1022 (2004); *State v. Kronich*, 131 Wn. App. 537, 543, 128 P.3d 119 (2006), *overruled on other grounds by State v. Jasper*, 174 Wn.2d 96, 271 P.3d 876 (2012).

The trial court, in its oral ruling, appeared to determine that Barnett made no mistake based on provisions in the parenting plan.[3] These provisions designated Booth as JEB's custodial parent and the parent that she would reside with, contained JEB's holiday and vacation schedules into the indefinite future, and provided that JEB would return to reside with Booth at the end of a visit with Barnett after the 2011-12 school year finished. This last provision is bluntly inconsistent with the assumption that JEB was to live with Barnett after the school year's end. Further, the trial court's order was designated a final order, and the court characterized its substance as a final parenting plan, each contradicting Barnett's argument that this was a temporary measure. Because Barnett signed the parenting plan, we charge her with knowledge of its contents. *See Recreational Equip., Inc. v. World Wrapps Nw, Inc.*, 165 Wn. App. 553, 568, 266 P.3d 924 (2011). Given Barnett's knowledge of the terms and nature of the parenting plan, we hold that substantial evidence supports the trial court's finding that she made no mistake. *See Skagit State Bank v. Rasmussen*, 109 Wn.2d 377, 381, 745 P.2d 37 (1987) (quoting *Johnston v. Spokane & I.E.R.R.*, 104 Wash. 562, 569, 177 P.2d 810 (1919)). Because substantial evidence supports the trial court's decision, we cannot say that its denial of Barnett's motion to vacate was

---

[3] The trial court made no explicit finding that Barnett made no mistake, but its order denying Barnett's motion to vacate was essentially such a finding, especially when read in light of Barnett's claims and its oral ruling.

8

unsupported by the evidence or so unreasonable as to render it an abuse of discretion. For these reasons, we affirm.

## II. BARNETT'S LETTER TO DSHS

Barnett also introduced her letter to DSHS, which asked that it stop Booth's child support because JEB would reside with him until Barnett and Booth sorted out where JEB would reside on a permanent basis at the end of the 2011-12 school year. Booth objected to the trial court's consideration of this letter at the argument over Barnett's motion. Barnett asserts that the trial court erred by sustaining Booth's objection and assigns error to this decision, but the record reflects that the trial court never ruled on Booth's objection. There is thus no evidence that the trial court excluded the letter. Because Barnett fails to shoulder her "burden of demonstrating . . . error," we must reject her claim. *Kane v. Smith*, 56 Wn.2d 799, 806, 355 P.2d 827 (1960).

## III. ATTORNEY FEES

Booth contends that Barnett's appeal is frivolous and requests attorney fees under RAP 18.9(a), which allows for an award of fees as sanction for a frivolous appeal. We may award fees under RAP 18.9(a) where the appeal "'is so totally devoid of merit that there [is] no reasonable possibility of reversal.'" *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 969 P.2d 64 (1998) (quoting *Presidential Estates Apartment Assocs. v. Barrett*, 129 Wn.2d 320, 330, 917 P.2d 100 (1996)) (alteration in original). Barnett has introduced enough evidence that she misunderstood the nature of the trial court's parenting plan order that we cannot call her appeal devoid of merit such that she had no reasonable possibility of success. We therefore deny Booth's request for fees.

No. 43849-6-II

## CONCLUSION

We affirm the trial court's denial of Barnett's motion to vacate the final parenting plan order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

HUNT, J.

MAXA, J.