# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE | ) | |
| | ) | No. 69214-3-I |
| OF | ) | |
| | ) | DIVISION ONE |
| CALVIN H. EVANS SR., Deceased. | ) | |
| | ) | |
| SHARON EADEN, VICKI SANSING, | ) | |
| AND KENNETH EVANS, | ) | |
| | ) | |
| Respondents. | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| CALVIN H. EVANS JR., | ) | |
| | ) | |
| Appellant | ) | |
| | ) | FILED: December 21, 2015 |

SPEARMAN, C.J. — In a proceeding under the Trust and Estate Dispute
Resolution Act (TEDRA), chapter 11.96A RCW, the trial court found that Calvin
Evans Jr. had financially abused his father, Calvin Evans Sr. and thus precluded
him from inheriting any of his father's property. Calvin Evans Jr. appeals,
claiming the trial court erred because the evidence was insufficient to find that he
willfully intended to inflict injury to his father's property or that his father was a
"vulnerable adult" at the time of the acts alleged to constitute the abuse. He also
claims the trial court failed to consider his contributions and improvements to his
father's property and failed to apply RCW 11.84.170 which allows a financial
abuser to inherit the property of the abused person under certain circumstances.

Finally, he claims the trial court erred when it denied his motion to reconsider. We find no error and affirm.

## FACTS

Calvin H. Evans, Sr. (Cal Sr.) was born on March 8, 1933. He owned and operated a successful excavation construction business. At the time of his death, Cal Sr. was no longer married and had four children: Kenneth Evans, Vicki Sansing, Sharon Eaden (Sharon), and Calvin H. Evans Jr. (Cal Jr.). Cal Sr. suffered from a medical condition called polycythemia, a thickening of the blood, which predisposed him to stroke. He suffered his first stroke in 2000.

In 2003, Cal Sr. purchased a 40-acre ranch in Sultan, Washington. Soon after, he purchased another 70-acre parcel nearby. In June 2004, Cal Sr. sold his twin engine Cessna 310C airplane to Cal Jr. for $80,000. Cal Jr. paid $20,000 down and gave a promissory note for the remaining $60,000. The note provided for monthly payments of $1000. After purchasing the plane, Cal Jr. convinced Cal Sr. that the plane had mechanical problems and that Cal Sr. should be responsible for purchasing a new engine. Cal Sr. paid $24,000 for a new engine, while Cal Jr. paid $8,000 for the installation of the new engine and an unknown amount of money for other improvements. Cal Jr. made no payments on the note and in June 2005, suggested that he and his father create an LLC for the ownership of the plane, with sixty percent in Cal Sr. and forty percent in Cal. Jr.

In December 2004, Cal Sr. asked Cal Jr. and his family to move to the ranch to take care of him and manage the ranch activities. Cal Sr. had previously stated his intention to Cal Jr. and others that if Cal Jr. agreed to do so, that Cal

2

Jr. would inherit the ranch property. In early 2005, Cal Jr. and his family moved from Idaho to the Sultan ranch. While they lived on the ranch, Cal Jr. and his family provided little personal care for Cal Sr., with the exception of some meals provided by Cal Jr.'s then wife.

Upon his arrival, Cal Jr. assumed responsibility for the ranch operations. His intention was to establish the ranch as a first class horse facility because it would provide him a greater income. Cal Jr. performed work on the ranch such as leveling the ground, cutting blackberries, burning trash, grading trails, fixing the barn floor and plumbing, painting the barn, leveling and compacting the indoor arena, and adding an outdoor arena. Cal Jr. also claimed to have built a road on the east side of the barn. In March 2005, Cal Sr. suffered another stroke after which his health continued to decline.

In June 2005, Cal Jr. convinced Cal Sr. to purchase a dump truck for $20,000. Cal Jr. registered the truck in the name of Calvin H. Evans, with no other designation. That summer he also installed a heat pump using $8,613 of Cal Sr.'s funds. Around the same time, Cal Jr. borrowed $75,000 from Cal Sr. to make improvements to the ranch. Sharon insisted that Cal Jr. document the $75,000 loan and prepared a draft promissory note. After Cal Jr. revised Sharon's draft, he and Cal Sr. signed it.

In 2005, Cal Jr. used $15,000 of Cal Sr.'s money to purchase a park model mobile home. He also purchased a new stovetop for the house, using Cal Sr.'s funds. Cal Jr. also convinced Cal Sr. to enter into a contract to add onto the barn, including 18 new stalls, for $75,000. The contractor did not finish the work

3

and Cal Jr. withheld $12,000 of the borrowed $75,000.

On December 28, 2005, Sharon filed a guardianship petition alleging that Cal Sr. was incapacitated. Charles Diesen, Cal Sr.'s attorney since 1970, was appointed to represent him. On December 28, 2005, Erv DeSmet was appointed guardian ad litem for Cal Sr.

On January 28, 2006, Cal Sr. underwent a medical examination to assess his need for a guardian. Psychologist Dr. Eisenauer diagnosed him with dementia secondary to stroke. The doctor found that he had memory impairment, mild disorientation, disturbances in executive functioning, and impaired judgment and insight.

In early 2006, Cal Jr. and his wife helped Cal Sr. prepare a will that designated Diesen as the personal representative and left the Sultan ranch and this Cessna airplane to Cal Jr.[1] This will reduced Sharon's share of the estate to $25,000; gave approximately 77 acres of pasture land to Vicki and Ken; gave Cal Sr.'s personal effects to Cal Jr., Vicki, and Ken, and created a trust for the benefit of Cal Jr., Vicki, Ken, and Cal Sr.'s grandchildren. On March 7, 2006, Cal Sr. executed the will. At the time, Diesen and his law partner, Carol Johnson, believed Cal Sr. had testamentary capacity.

Cal Sr. had another stroke in November 2006. He was placed in limited guardianship in June 2008, with Unlimited Guardianship Services of Washington (UGS) appointed as guardian. Under the guardianship, Cal Jr. was allowed to

---

[1] There was an earlier will that Cal Sr. had executed on May 18, 2004, that divided the estate equally among his four children.

4

remain on and operate the ranch as long as Cal Sr. wanted him to, and Cal Jr. was ordered to pay the taxes and insurance on the ranch and manage the property so that it maintained its value. Cal Jr. did not pay any taxes or insurance and, during the pendency of the guardianship, liquidated ranch assets and kept the proceeds. Cal Jr. also received six or seven of Cal Sr.'s social security checks, which he deposited into his own account and used the funds for his own purposes. Cal Jr. was required to reimburse the funds.

UGS petitioned for dismissal as Cal Sr.'s guardian in spring 2010, after which Sharon was appointed successor guardian. Cal Sr. was receiving full time home care when he died on April 5, 2011. His 2006 will was filed for probate on April 29. 2011. On July 14, 2011, petitioners Sharon Eaden, Ken Evans, and Vicki Sansing (collectively, Eaden) brought a TEDRA petition seeking a declaration that the will was invalid due to lack of competency and undue influence, and seeking to declare Cal Jr. an "abuser" under RCW 11.84.010.[2]

A trial on the petition was heard in March 2012. At the conclusion of the trial, the court upheld Cal Sr.'s 2006 will, concluding that at the time Cal Sr. signed the will he had the testamentary capacity to do so. The court also found, however, that as early as 2004, Cal Sr. was a vulnerable adult because he was over 60 years of age and lacked the functional, mental, and physical ability to care for himself. The court concluded that Cal Jr. had financially exploited his

---

[2] Sharon Eaden also filed a separate petition for a declaration of rights on September 7, 2012, seeking **not** to apply the anti-lapse statute to Cal Sr.'s estate. The trial court denied the petition and this court affirmed in In the Matter of the Estate of Evans, 181 Wn. App. 436, 326 P.3d 755 (2014).

father and, pursuant to RCW 11.84.030, .040, deemed him to have predeceased Cal Sr. Judgment was entered against Cal Jr. on May 31, 2012, in the amount of $85,536.27, including a discretionary award of attorneys' fees and costs. Cal Jr.'s motion for reconsideration was denied.

He appeals.[3]

## DISCUSSION

We review the superior court's findings for substantial evidence. Scott v. Trans-Sys., Inc., 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003).[4] We defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony. Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003); Burnside v. Simpson Paper Co., 123 Wn.2d 93, 108, 864 P.2d 937 (1994) (citing State v. O'Connell, 83 Wn.2d 797, 839, 523 P.2d 872 (1974)). We review questions of law de novo. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). It is also well settled that "[w]e will not review an issue, theory, argument, or claim of error not presented at the trial court level." Lindblad v. Boeing Co., 108 Wn. App. 198, 207, 31 P.3d 1 (2001) (quoting

---

[3] Cal Jr. appeals the trial court's denial of his motion for reconsideration and for a new trial under CR 59(a)(4), (7), and (9), and for relief from judgment under CR 60(b)(1), (3), (4) and (11). Id. He argues that the trial court failed to consider the effect of his contributions to the property, and the fact that Cal Sr. benefited from these contributions. Id. This court reviews the denial of a motion for reconsideration for abuse of discretion. Lilly v. Lynch, 88 Wn. App. 306, 321, 945 P.2d 727 (1997). Cal Jr. fails to meet any of the stated grounds for reconsideration, relief from judgment, or a new trial.

[4] Cal Jr. argues for some higher standard based on the requirement that the trial court make findings of clear, cogent, and convincing evidence. Substantial evidence is still the standard on review; findings can only be sustained if they are supported by "substantial evidence which the lower court could reasonably have found to be clear, cogent, and convincing." In re Detention of Labelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

Demelash v. Ross Stores, Inc., 105 Wn. App. 508, 527, 20 P.3d 447 (2001)). If an issue raised for the first time on appeal, however, is "'arguably related' to issues raised in the trial court," a reviewing court may exercise its discretion to consider it. Lunsford v. Saberhagen Holdings, Inc., 139 Wn. App. 334, 338, 160 P.3d 1089 (2007).

Here, for the first time on appeal, Cal Jr. argues that the trial court erred when it found that he financially abused his father because there was no clear, cogent, and convincing evidence that he willfully intended to inflict financial injury on Cal Sr. as required by RCW 11.84.160(b). That statute provides that in determining whether a person is an abuser the court must find by clear, cogent and convincing evidence that "[t]he conduct constituting financial exploitation was willful action or willful inaction causing injury to the property of the vulnerable adult." By its own terms the statute does not expressly require a finding of intent to cause injury to the victim's property. Nonetheless, Cal Jr. argues that proof his "willful" conduct caused injury to Cal Sr.'s property is insufficient to show he is an abuser. He now contends it must be shown that he "intentionally" caused the injury.

Cal Jr. argues that he preserved this issue for appeal because, in his trial brief, he noted that one of the legal questions presented for trial was whether "Calvin Evans Sr. (sic) was an abuser of Calvin Evans Sr. as set forth in RCW 11.84?" Clerk's Papers (CP) at 627. He also observed that "RCW 11.84.160 gives evidence factors for determining an abuser...." CP at 637. And he attached a copy of the statute. But Cal Jr. cites to no place in the record where he argued

to the trial court that it was required to find that he intentionally caused injury to Cal Sr.'s property. Cal Jr. also argues that he may raise this issue on appeal for the first time because "willfulness is an essential element of [Sharon]'s burden... and therefore raised." Reply Br. at 4, n.2. We reject this argument. That the trial court made findings regarding Cal Jr.'s willful action, does not preserve Cal Jr.'s right to raise a new argument about whether the trial court was also required to find that he intentionally caused injury to Cal Sr.'s property. Because the issue was not properly preserved below, we decline to consider it on appeal. "We do not review the trial court's actions as to questions not brought to its attention." Kane v. Smith, 56 Wn.2d 799, 806, 355 P.2d 827 (1960).

Cal Jr. next contends that the findings of fact regarding his father's status as a vulnerable adult are not supported by clear, cogent, and convincing evidence and are too vague as to the time period. Insofar as is relevant here, a vulnerable adult is a person who is "[s]ixty years of age or older who has the functional, mental, or physical inability to care for himself or herself[.]" See RCW 11.84.010(6) and RCW 74.34.020(21).[5] Cal Jr. concedes that Cal Sr. was well over 60 year old during the time period the trial court found the financial exploitation occurred, 2005 through Cal Sr.'s death in 2011. But he claims the evidence showed that Cal Sr. was capable of caring for himself "at least until his third stroke in November 2006." Br. of Appellant at 38. In support of this assertion he cites evidence that:

---

[5] Subsections of RCW 74.34.020 were renumbered in 2015 but the text is unchanged; therefore, we will cite to the current subsection.

8

(1) there was no guardianship put in place until June 2008, (2) there was no licensed home care until after June 2008, (3) Cal SR's trusted attorney believed that Cal SR was competent all this time; (4) the trial court itself found that Cal SR was competent and able to resist attempts at undue influence in March 2006 when he executed his will, (5) Petitioner Sharon Eaden's own diary demonstrates that Cal SR had mental clarity in August 2005, (6) Petitioner Vicki Sansing borrowed $30,000 from Cal SR in November 2006, and (7) no examination or medical evidence precedes the January 2006 evaluation performed by Dr. Eisenhauer.

Br. of Appellant at 37.

But the cited evidence does not contradict the trial court's finding that Cal Sr. was unable to care for himself. That Cal Sr. was not subject to a guardianship or in licensed home care are relevant considerations but do not in themselves establish he was able to care for himself.

Cal Jr. also seems to argue that because Cal Sr. was competent to attest to a will he was also functionally, mentally or physically able to care for himself. But one does not necessarily establish the other. "The possession of testamentary capacity involves an understanding by the testator of the transaction in which he is engaged, a comprehension of the nature and extent of the property which is comprised in his estate, and a recollection of the natural objects of his bounty." Dean v. Jordan, 194 Wash. 661, 668, 79 P.2d 331 (1938). One could, as the trial court found, satisfy this test but still be unable to care for oneself.

Nor does the fact that Cal Sr.'s daughter, Vicki, borrowed money from him or an isolated observation by his other daughter, Sharon, undermine the trial court's finding that Cal Sr. was unable to care for himself. The trial court heard considerable evidence on the issue. Sharon testified that during the 2004

9

Thanksgiving holiday, Cal Sr. was unable to find his way to and from her home to his motel. She also observed that Cal Sr. "was confused," that "[h]is short term memory was not tracking," that he "would tell the same stories over and over again." Verbatim Report of Proceedings (VRP) (03/14/12) at 156. He also had "trouble eating" and "couldn't find his keys." Id. Sharon further testified that prior to 2004 "there were signs of him being unable to balance his checkbook and keep track of his checkbook because his neat and tidy marks in the 2004 check register suddenly turned into stuff you just couldn't recognize." VRP (3/19/12) at 516. She concluded that "he was deteriorating at the end of 2004, but he continued to deteriorate all the way through the end of 2005 and beyond." VRP (3/15/12) at 370. In addition, in 2005 Sharon observed that Cal Sr. was unable to start the backhoe even though it was a piece of equipment that he had operated for years. "It was very, very apparent that he was kind of lost." VRP (3/14/12) at 137.[6]

Many of Sharon's observations were substantiated by the evaluation performed by Dr. Eisenhauer in January 2006, well before Cal Sr. suffered his third stroke. She reported that Cal Sr. suffered from dementia, which appeared in the form of "memory impairment, mild disorientation, disturbances in executive functioning and impaired judgment and insight." Respondent's Exhibit 47 at 2. Dr. Eisenhauer concluded that because of Cal Sr.'s impaired executive functioning, he was "**vulnerable to make decisions and take actions that will harm him without recognizing the possible consequences**;" Resp. Ex. 47 at 6, "that due

---

[6] Finding of fact 69 erroneously attributes this testimony to Cal Jr. instead of Sharon.

to his impoverished cognitive functioning that he **needs financial assistance;**" that he was "**vulnerable to undue influence**" Id. at 8, and that he was "**unable to live independently without support.**" Id. at 9. With regard to financial matters, such as signing contracts, the doctor concluded: Cal Sr. "would not be able to sufficiently understand it to act knowledgably. Furthermore, he does not have sufficient appreciation of his deficits to know these limitations. He needs assistance from an informed neutral party who does not have a stake in his assets." Id.

Cal Jr. seems to argue that the trial court erred in finding that Cal Sr. was a vulnerable adult because some of the evidence regarding Cal Sr.'s abilities was disputed. But the mere fact that evidence is disputed does not establish that the trial court's findings are inadequately supported. Where the testimony and evidence is conflicting, we defer to the trial court to resolve issues of credibility and weight. Niemann v. Vaughn Community Church, 154 Wn.2d 365, 377-78, 113 P.3d 463 (2005). We reject Cal Jr.'s challenge to the trial court's finding that Cal Sr. was a vulnerable adult because it is amply supported by substantial evidence.[7]

Cal Jr. also challenges the trial court's finding that he financially exploited his father. "Financial exploitation" is defined as the "improper use, control over, or withholding of the property, income, resources, or trust funds of the vulnerable

---

[7] Finding of fact 203 appears to be a clerical error; the trial court found that the GAL recommended "an order for a less restrictive alternative" that was "entered by the Court in the guardianship proceeding in lieu of establishing a guardianship." VRP (4/19/12) 1972. No finding was made of a limited guardianship.

adult by any person or entity for any person's or entity's profit or advantage"

other than for the vulnerable adult's profit or advantage." RCW 11.84.010(3) and

RCW 74.34.020(7). Financial exploitation includes but is not limited to:

> (a) "[t]he use of deception, intimidation, or undue influence by a person or entity in a position of trust and confidence with a vulnerable adult to obtain or use the property, income, resources, or trust funds of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult;
>
> (b) The breach of a fiduciary duty, including, but not limited to, the misuse of a power of attorney, trust, or a guardianship appointment, that results in the unauthorized appropriation, sale, or transfer of the property, income, resources, or trust funds of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult; or
>
> (c) Obtaining or using a vulnerable adult's property, income, resources, or trust funds without lawful authority, by a person or entity who knows or clearly should know that the vulnerable adult lacks the capacity to consent to the release or use of his or her property, income, resources, or trust funds. Id.

Cal Jr. first claims that his actions were proper because he had a legal

contract with Cal Sr. to care for the ranch and the improvements were

"consideration flowing to Cal SR" in exchange for Cal Jr.'s inheritance. Br. of

Appellant at 42. In support of this argument, he cites his own testimony that "[Cal

Sr.] said that Debbie and I could move onto the property. We could have the

house. He would take over the apartment above the garage. He said that he had

plenty of money. I didn't have to worry about money again." Reply Brief at 19. He

contends that a reasonable person would understand Cal Sr.'s statement as an

oral contract that "Cal SR would fund most of the ranch expenses" and provide

Cal Jr. "an expected minimum income of $3000 per month. . . ." Id. He cites to no

other evidence of an oral agreement.

But again, because this issue was not presented to the trial court, it cannot be raised for the first time on appeal. Despite Cal Jr.'s claim that he raised the issue in closing argument and on reconsideration, the only references found in the record are to an agreement that Cal Sr. would receive $3,000 per month from the ranch tenant and that Cal Jr. knew he did not have title to the ranch when he made improvements. On appeal, our review is limited to determining "whether there exists the necessary quantum of proof to support the trial court's findings." Bentzen v. Demmons, 68 Wn. App. 339, 347, 842 P.2d 1015 (1993) (quoting In re Sego, 82 Wn.2d 736, 740, 513 P.2d 831 (1973)). Because the trial court did not have the opportunity to make findings regarding this issue, we decline to consider it on appeal.

Next, Cal Jr. argues that even if there were no oral agreement, the trial court erred when it concluded that Cal Sr. did not benefit from Cal Jr.'s investment of time and money in the ranch. According to him, the trial court erred when it failed "to weigh Cal JR's personal financial contributions to Cal SR's property when considering the question of willful financial abuse." Reply Br. at 10. He disputes several of the trial court's findings of fact related to circumstances surrounding the promissory note, the work on the ranch, the accounting of ranch expenses, the purchases he made, and the construction of the new road. We disagree. Cal Jr.'s argument fails because he is trying to offer apples to offset oranges. Any alleged benefit to Cal Sr. did not arise from Cal Jr.'s improper conduct. Cal Sr. may have arguably benefited from Cal Jr.'s investment of time and money into the ranch, but none of Cal Jr.'s improper

conduct was undertaken for Cal Sr.'s benefit or advantage. Cal Jr. fails to cite to any authority or make a convincing argument as to why his financial contributions should offset his financial exploitation or abuse.

Cal Jr. next argues that his conduct was not improper because Cal Sr. consented to all of the expenditures and improvements.[8] Again, these are apples offered to offset oranges. Even if Cal Sr. had consented to the improvements, there is still sufficient evidence in the record to support the trial court's findings related to Cal Jr.'s financial exploitation of his father, including the conversion of Cal Sr.'s social security checks, the registration of vehicles in Cal Jr.'s name, the sale of Cal Sr.'s personal property and keeping the proceeds, and other notes and loans to Cal Jr. for which there was no accounting.

Cal Jr. argues that the trial court failed to conduct the required statutory analysis that would have allowed him to inherit even if he did financially exploit his father. Cal Jr. argues that Cal Sr. knew of the exploitation and subsequently ratified his intent to transfer by consenting to expenditures and later making a will that left the ranch to Cal Jr. But again, we conclude that Cal Jr. waived this

---

[8]Cal Jr. testified that Cal Sr. wanted the fencing to be redone and that the barn needed to be repaved for the new horse trainers. He testified he "happened to walk in the house one day, and Dad says, "'I'm going to buy a motorcycle.'" VRP (3/31/12) at 1028-29. According to him, Cal Sr. purchased a scooter. Cal Jr. testified that he had discussions with Cal Sr. about the heat pump and that it provided heating and cooling to Cal Sr.'s living area. He testified that he discussed buying a hay baler. He testified that Cal Sr. bought the new dump truck, because he wanted to help out a lady he knew, and that he put the truck in Cal Jr.'s name. Cal Jr. also testified that they discussed the purchase of the mobile home and the stovetop. He testified that it was Cal Sr.'s idea to clean the ranch, including taking out stumps, cleaning up bushes, completing the driveways, and painting the riding area. According to his testimony, there was "never a time when dad wasn't consulted about changes." Id. at 1318. He testified that he and Cal Sr. had discussions about all the money Cal Jr. spent, and that he passed every decision by Cal Sr. and he had no displeasure.

argument because he failed to bring it before the trial court. Cal Jr. argues that he raised the issue of consent in his trial brief, and that suffices to preserve his ratification argument. We disagree. RCW 11.84.170 requires the trial court to find whether clear, cogent, and convincing evidence supports knowledge and ratification of intent. Because Cal Jr. did not raise this issue at trial, there are no findings to review.

Finally, Cal Jr. argues that the trial court failed to exercise its discretion under RCW 11.84.170 to allow him to inherit as a matter of equity. RCW 11.84.170(2) permits, the trial court to allow an abuser to acquire or receive an interest in property or other benefit in any manner that it deems equitable. In determining what is equitable, the court may consider the various elements of the decedent's dispositive scheme, his or her likely intent given the totality of the circumstances, and the degree of harm resulting from the financial exploitation. Id. Cal Jr. cites nothing in the statute that requires the trial court to address this issue even though it was not raised by a party. Because Cal Jr. did not raise this issue below, we decline to consider it here.

Both parties request an award of reasonable attorneys' fees and costs on appeal pursuant to RCW 11.96A.150(1) and RAP 18.1(a). RCW 11.96A.150(1) allows for a discretionary award of attorney fees to any party, against any party or against the estate, on both the trial and appellate court levels. We deny Cal

Jr.'s request for fees and grant the respondents' their reasonable attorneys' fees and costs incurred in defending this appeal.

Affirmed.

WE CONCUR:

Spearman, C.J.